269 So.2d 650 (1972)
DeWayne (Dee Wayne) JOLLY
v.
STATE of Mississippi.
No. 46995.
Supreme Court of Mississippi.
November 27, 1972.
*651 McLaurin & Nicols, J. Hal Ross, Brandon, for appellant.
A.F. Summer, Atty. Gen., by J.B. Garretty, Special Asst. Atty. Gen., Jackson, for appellee.
RODGERS, Presiding Justice.
The appellant, DeWayne Jolly, was indicted on a charge of manslaughter in Rankin County, Mississippi. He was tried during the October Term of the Circuit *652 Court of Rankin County, convicted by the jury and sentenced by the court to serve a term of fifteen (15) years in the state penitentiary. From that verdict and sentence the appellant appeals to this Court.
In the early morning hours of September 8, 1971, the deceased Bobby Cox, the appellant, and two others were drinking and carousing around in a remote wooded area of Rankin County. Around 2 A.M. that morning, the accused and the decedent became involved in a fist fight in which the decedent was severely beaten. Later that morning, the decedent was taken to the Scott County Hospital in Morton where he was treated for his wounds. While the attending physician thought that the decedent's condition was critical, he did not think death was imminent. By September 11, 1971, the decedent had recovered sufficiently in the treating physician's opinion to be discharged from the hospital. However, on September 24, 1971, Cox's condition had deteriorated considerably, and he had to be readmitted to the hospital in Morton. By September 30, 1971, Cox had become comatose and was transferred to the University Hospital in Jackson, Mississippi. Upon diagnosing Cox's malady as a subdural hematoma, surgeons at University Hospital performed an operation in an effort to relieve the pressure on the brain caused by the brain hemorrhage. Unfortunately though, as a result of the subdural hematoma, substantial irreversible damage had already been inflicted upon brain centers which control vital body functions, and Bobby Cox died on October 4, 1971.
First, the appellant contends that the lower court erroneously authorized the giving of an instruction which mentioned the term "culpable negligence", but neither that instruction nor any other instruction defines, nor otherwise describes, the term "culpable negligence". The challenged instruction reads as follows:
"The Court instructs the Jury for the State of Mississippi that, the involuntary killing of a human being by another person is manslaughter when done by the culpable negligence of such other person without the authority of law. If you believe from all of the evidence in this case beyond a reasonable doubt that the defendant, DeWayne Jolly did strike and beat the decedent, Bobby Cox, with his fists or any other instrument, by an act of culpable negligence on the part of the said defendant, and that the said Bobby Cox died as a result thereof and without authority of law, then it is your sworn duty to find the defendant Guilty as charged." (Emphasis added.)
We are of the opinion that this instruction should not have been given in the absence of a proper definition of the term "culpable negligence". The necessity for imparting to the jury a clear and full understanding of the words "culpable negligence" has been clearly expressed by this Court since Justice McGehee, in his opinion in Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945), stated:
"... [W]e are here strengthening the requirements for a proper definition of culpable negligence, as compared with that heretofore given in our decisions. * * * In other words, culpable negligence should be defined as the conscious and wanton or reckless disregard of the probabilities of fatal consequence to others as a result of the wilful creation of an unreasonable risk thereof." (Emphasis added.) 197 Miss. at 816-817, 20 So.2d at 705.
The importance of clearly and precisely defining "culpable negligence" is underscored in a long line of Mississippi cases following the Smith decision. Those cases held that it was reversible error to instruct the jury that "culpable negligence" could be equated with "gross negligence" or "simple negligence". Thus, this Court has repeatedly demanded that a jury be instructed that "culpable negligence" means nothing less than
"`... [A] negligence of a degree so gross as to be tantamount to a wanton *653 disregard of, or utter indifference to, the safety of human life, and that this shall be so clearly evidenced as to place it beyond every reasonable doubt.'" Sullivan v. State, 213 Miss. 14 at 24, 56 So.2d 93 at 98 (1952).
See Grinnell v. State, 230 So.2d 555 (Miss. 1970); Yelverton v. State, 191 So.2d 393 (Miss. 1966); Coleman v. State, 208 Miss. 612, 45 So.2d 240 (1950); Downs v. State, 206 Miss. 831, 41 So.2d 19 (1949); Reynolds v. State, 199 Miss. 409, 24 So.2d 781, 784 (1946); Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945); McKinney v. State, 196 Miss. 826, 18 So.2d 446 (1944); Shows v. State, 175 Miss. 604, 168 So. 862 (1936).
In Yelverton v. State, 191 So.2d 393 (Miss. 1966) this Court cited the following rule from Mabry v. State, 248 Miss. 149, 151, 158 So.2d 688, 689 (1963):
"In civil cases involving a charge of negligence, it is well established that instructions for the plaintiff must state the alleged acts of negligence and define them, and may not simply refer to the negligence as charged in the declaration. In criminal cases such a requirement should be even stronger and more necessary. This is the general rule. The jury should be instructed properly as to the nature and elements of the offense charged, and `the court must define and explain the crime charged, setting forth the essential elements thereof.'" 191 So.2d at 396.
Therefore, to summarize, "Instructions to the jury should embody hypothes(e)s constituting the offense or elements of the offense directly and positively ..." Gates v. State, 160 Miss. 479, 480, 135 So. 189 (1931). To fail to adequately instruct the jury on the definition of terms bearing directly on the nature of the offense would be tantamount to leaving "... the jury without a standard of lawfulness or unlawfulness with which to assess the acts of the appellant." Walsingham v. State, 250 So.2d 857, 859 (Fla. 1971).
Taking a different approach to this problem, this Court in Irby v. State, 186 Miss. 161, 185 So. 812 (1939) disapproved an instruction that mentioned the words "culpable negligence" in a case in which all the evidence indicated that the appellant intentionally inflicted the death-dealing blows upon the deceased. This Court emphasized the intentional character of the fatal blows, when Justice Smith, speaking for the Court, stated:
"The vice of this instruction is its use of the words `culpable negligence' . . The evidence discloses no negligence of any sort on the part of the appellant but intentional acts, the quality of which determines his guilt or innocence." 186 Miss. at 169, 185 So. at 815.
The facts in the instant case make it clear (in fact it is admitted) that the appellant, DeWayne Jolly, intentionally beat Bobby Cox about the head. There is no evidence to indicate that the appellant was negligent in striking the decedent, the appellant's acts were simply intentional in character. Therefore, under the rule espoused in Irby, it was error for the lower court to grant a culpable negligence instruction where there was no evidence that negligence of any kind precipitated the decedent's death.
Even though the trial court cannot give instructions on its own (Section 1530, Mississippi Code 1942 Annotated [1956]) and is under no obligation to modify or correct a defective instruction (Johnson v. State, 78 Miss. 627, 29 So. 515 [1900]), the lower court must refuse instructions which do not correctly state the principles of law applicable to the facts in a particular case. Price v. State, 207 Miss. 111, 41 So.2d 37 (1949), Cert. Den. 338 U.S. 844, 70 S.Ct. 92, 94 L.Ed. 516 (1949), Reh. Den. 338 U.S. 888, 94 L.Ed. 545, 70 S.Ct. 187 (1949).
In any event it is obvious that to allow such an instruction under the facts here presented would be to mislead or confuse *654 the jury as to the principles of the case; this instruction is tantamount to a reversible error. See, i.e., Moak v. Black, 230 Miss. 337, 92 So.2d 845 (1957); Graham v. Brummett, 182 Miss. 580, 181 So. 721 (1938).
The appellant next argues that the lower court erred in permitting Justice of the Peace R.K. Owen to testify over appellant's objection as to certain statements made by Bobby Cox at the preliminary hearing shortly before Cox's death. The appellee argues that this testimony was properly admitted under the dying declaration exception to the hearsay rule; however, one of the prime requirements for the admission of dying declarations is that the declarant be conscious of, and solemnly recognize that death is imminent. See Houston v. State, 246 Miss. 77, 84, 149 So.2d 331, 334 (1963); Simmons v. State, 206 Miss. 535, 538, 40 So.2d 289, 291 (1949); Lea v. State, 138 Miss. 761, 770, 103 So. 368, 370 (1925); McCormick, Handbook of the Law of Evidence, § 259, pp. 555-556 (1954).
Nowhere is there the slightest suggestion that Bobby Cox had any sense whatsoever of impending death. We think that it is apparent that a man who is perfectly capable of testifying in court at a preliminary hearing some twenty (20) days prior to his death is not making a dying declaration.
We must then decide the question as to whether or not Judge Owen's testimony could be admitted under an exception to the hearsay rule dealing with testimony taken at a preliminary hearing.
Professor McCormick in his Handbook of the Law of Evidence (1954) sets forth the following criteria for the admission of former testimony:
(1) Former testimony must have been given under oath (§ 231, p. 482);
(2) The party against whom the testimony is now offered (or a party of like interest) must have had reasonable opportunities to cross-examine and confront the witness (§ 231, pp. 482-487); See Barber v. Page, 390 U.S. 719, 722, 88 S.Ct. 1318, 1320, 20 L.Ed. 255, 257 (1968);
(3) There must have been "identity of the parties", that is, there must have been privity between the witness in the former trial and the person against whom the testimony is offered in the second trial (§ 232, pp. 487-490);
(4) There must have been "identity of issues", that is, the matter investigated or prosecuted in the first proceeding must have arisen out of the same transaction as the charge being pursued in the second trial (§ 233, pp. 490-491);
(5) The witness must have been unavailable at the second proceeding due to  (a) death, (b) absence (temporary or permanent jurisdictional absence), (c) physical disability resulting in inability to testify at the second proceeding, or (d) mental incapacity (§ 234, pp. 491-496); Compare Peeples v. State, 218 So.2d 436, 438 (Miss. 1969). See also Holman v. Washington, 364 F.2d 618, 622 (5 Cir., 1966); Davis v. State, 255 So.2d 916, 919-920 (Miss. 1971); Lipscomb v. State, 76 Miss. 223, 254-255, 25 So. 158, 165 (1899); Owens v. State, 63 Miss. 450, 451 (1886); Strickland v. Hudson, 55 Miss. 235, 241 (1877).
The appellant points out that the testimony of Bobby Cox at the preliminary hearing is at variance with hearsay exception requirements in the following respects:
(1) There was no transcript made of the former proceedings;
(2) The record does not show that Bobby Cox was under oath when he testified;
(3) There was no showing of an opportunity on the part of the appellant to cross-examine Bobby Cox.
First, the fact that no formal record existed of the proceedings of the preliminary hearing will not, by itself, operate to prohibit Judge Owen from testifying as to *655 what he heard. The well-established rule of law is that a firsthand observer to the earlier proceedings who can recount all significant portions of the testimony received at those proceedings may narrate the substance of what he saw and heard at a later proceeding arising out of the same transaction as the first proceeding. Spivey v. State, 212 Miss. 648, 55 So.2d 404 (1951); Crane v. State, 157 Miss. 548, 128 So. 579 (1930). See also 23 C.J.S. Criminal Law §§ 892-899, pp. 506-531 (1961); McCormick, Handbook of the Law of Evidence, § 237, p. 498 (1954); Wharton's Criminal Evidence, §§ 470-474, pp. 266-272 (1955); Wigmore, A Treatise of the Anglo-American System of Evidence in Trials at Common Law, 3d ed., Vol. V, §§ 1402, 1403, 1667, pp. 148-149, 662-664 (1940).
Second, there is nothing in the transcript of the present case to indicate that the testimony of the decedent, Bobby Cox, was under oath. Since the requirement that the former statement be given under oath is an essential prerequisite to establishing the trustworthiness of the testimony given, we must therefore conclude that the appellee failed to lay a proper foundation for the admission of the judge's testimony. Owens v. State, 63 Miss. 450 (1886); see also Holman v. Washington, 364 F.2d 618, 624 (5 Cir., 1966); McCormick, Handbook of the Law of Evidence, § 231, p. 482 (1954).
Third, the appellant argues that he was effectively denied his right to cross-examine the witness by not being represented by counsel during the preliminary hearing. The burden is upon the state to show that the appellant had an attorney at all critical points in the criminal procedure against him, or to show that the defendant effectively waived his constitutional right to have counsel; otherwise, evidence obtained at such critical times against the defendant will not be admissible against the defendant. See Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) decided the day after Coleman, supra, the United States Supreme Court held that a statement by a witness against the accused given at a preliminary hearing was admissible in the later trial where the witness had testified under oath. In that case the defendant was represented by counsel, and an accurate judicial record of the proceedings was maintained; thus he was effectively accorded his right to cross-examine the witness at the preliminary hearing. (399 U.S. at 165, 90 S.Ct. at 1938, 26 L.Ed.2d at 501).
In the instant case the evidence is not clear, but upon retrial, these requirements may be shown before the trial court is required to pass upon this issue.
The appellant complains that the lower court erred in overruling his objections to the testimony of witnesses John Edwards, A.B. Martin, and John R. Edwards on the grounds that the defendant had not been given proper Miranda warnings before the above named police officers questioned him. However, the appellant signed a waiver which outlined his constitutional rights, and on direct examination, the appellant admitted that the statements he gave to the police were made freely and voluntarily. Thus, we think this element of the appellant's argument is without merit.
The appellant also contends that the testimony of officers John Edwards, A.B. Martin and John R. Edwards concerning statements made to them by the appellant and his co-defendants in the course of police questioning was inadmissible as hearsay. In Hooper v. State, 218 So.2d 19 (Miss. 1969), Cert. Den. 395 U.S. 970, 89 S.Ct. 2121, 23 L.Ed.2d 758 (1969) we held that testimony as to statements made by the defendant to police officers following his arrest was admissible where these statements were freely and voluntarily made, and the defendant had been advised of his rights, including his right to a lawyer, and his right to remain silent. See also Spurlin v. State, 218 So.2d 876 (Miss. 1969). Since *656 the appellant in the instant case testified that he had freely and voluntarily made the statements which John Edwards, John R. Edwards, and A.B. Martin later testified to, the trial judge properly concluded that the appellant's statements had been voluntarily made without coercion.
The argument of the appellant, that the statements of his co-defendants made to police officers in his presence were inadmissible, is not well taken. There is ample authority to the effect that statements made by a third person, which tend to incriminate an accused, are admissible so long as they are made in the presence of the accused and are not contradicted, denied nor objected to by the accused. Here the statements made by the witnesses were not refuted by the appellant. In fact, the appellant admitted by his own testimony the substance of the statements made by his co-defendants and testified to by the interrogating officers. Therefore, the trial court properly overruled the defendant's objections to the testimony of witnesses A.B. Martin, John Edwards, and John R. Edwards concerning statements given by co-defendants William Jolly and Sam Brown. Duck v. State, 247 So.2d 689 (Miss. 1971); Henry v. State, 209 So.2d 614, 616 (1968); Goldsby v. State, 240 Miss. 647, 123 So.2d 429, Cert. Den. 365 U.S. 861, 81 S.Ct. 829, 5 L.Ed.2d 824 (1960); Robinson v. State, 235 Miss. 100, 108 So.2d 583 (1959); Gillespie v. State, 215 Miss. 380, 61 So.2d 150 (1952); Thurmond v. State, 212 Miss. 36, 53 So.2d 44, see cases collected at 46 (1951); 29 Am.Jur.2d, Evidence § 610, p. 664 (1967); Underhill, A Treatise on the Law of Criminal Evidence, § 259, pp. 489-493 (1935).
The appellant has also assigned as error the lower court's refusal to allow the introduction into evidence of medical records from the University of Mississippi Medical Center Hospital. The procedure for the acquisition, identification and admission of hospital records is set forth in Sections 7146.3-02 to 7146.3-08, Mississippi Code 1942 Annotated (Supp. 1972). While a subpoena duces tecum was issued to the custodian of the hospital records as required by Section 7146.3-02, Mississippi Code 1942 Annotated (Supp. 1972), an affidavit setting forth the various criteria contained in Section 7146.3-05, Mississippi Code 1942 Annotated (Supp. 1972) was not supplied. Furthermore, the appellant failed to state just what purpose the introduction of these hospital records would serve, or to otherwise establish their relevance. In short, the appellant failed to establish the necessary predicate for the admission of the University Hospital records. Under these circumstances, the trial court properly refused to permit the University Medical Center records to be introduced into evidence.
We have examined the instructions complained of by the appellant in the light of his objections, and we are convinced that there is no reversible error in any of these instructions except the instruction given by the court as to "culpable negligence".
Finally, the appellant contends that the evidence in this case is insufficient as a matter of law to sustain a conviction. Since this cause is to be retried, the weight of the evidence will be a matter for the consideration by a new jury; therefore, we will refrain from commenting on the weight of the evidence. Instead, we will simply observe that, in our opinion, there was sufficient evidence presented during the trial of this case to warrant a submission of the issues of fact to the jury.
Reversed and remanded.
JONES, INZER, SUGG, and BROOM, JJ., concur.